# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN A. BENNETT | ) Civil Action No. 11-01222 |
| | ) |
| | ) Judge David S. Cercone/ |
| Plaintiff, | ) Magistrate Judge Cynthia Reed |
| Eddy | ) |
| v. | ) |
| | ) |
| BEGGS AND LANE, LLP, and | ) |
| THOMAS F. GONZALEZ, ESQ. | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

**I.  REPORT**

In this diversity matter, Susan A. Bennett ("Bennett" or "Plaintiff"), a Pennsylvania resident, alleges that the Florida law partnership, Beggs and Lane, LLP ("the Firm"), and one of its partners, Thomas A. Gonzalez, Esq. ("Gonzalez") (collectively "Defendants"), committed legal malpractice by failing to file an action on her behalf prior to the running of the relevant statute of limitations. [ECF No. 1]. Pending is the Defendants' Motion to Dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and/or for failure to state a claim pursuant to Fed. Rule 12(b)(6). [ECF No.7]. In her Opposition to the Motion to Dismiss [ECF No.11], Plaintiff "agrees that the Northern District of Florida would be a more proper venue" and requests that this action be transferred pursuant to the provisions of 28 U.S.C. § 1404(a). Because this Court lacks jurisdiction over Defendants and Plaintiffs do not oppose transfer, it is respectfully recommended that the case be transferred to the District Court for the Northern District of Florida in accordance with 28 U.S.C. §1631.

II. **DISCUSSION**

**Background**

Plaintiff, a Primary Care Physician's Assistant, engaged the Defendants to represent her in connection with entries made in a December 2007 Medical Malpractice Payment Report ("MMPR"), and a National Practitioners Database Report ("NPDB") which incorrectly identified her as the culpable party in a medical malpractice action, stating that that her negligence resulted in a $450,000 settlement.

This matter has its genesis in Bennett's 1998-2004 employment with the Department of Veterans' Affairs ("VA") Medical Center (the "Center") in Pensacola, Florida. In late 1999, she ordered a urology consult, including a test prostate-specific antigen test ("PSA"), for a patient seen in the Center's Outpatient Clinic. According to Plaintiff, "[d]uring the patient's subsequent visits to the [Center]," she "continued to press for the urology consult and the PSA," but the Center failed to act in a timely manner, resulting in a delayed diagnosis of prostate cancer. The patient filed a medical malpractice action against the Center. Bennett was not named in the suit, and, during the course of the litigation, the government's attorney admitted that she had ordered a urology consult on December 8, 1999, and that the consult was delayed due to system overload. [ECF No. 1 at ¶ 11]. On March 24, 2004, the medical malpractice action was settled.. [Id. at ¶12].

Bennett asserts that in early 2007, nearly three years following the settlement, the Center made entries in two databases indicating that $450,000 had been paid in settlement as a result of Plaintiff's alleged failure to order appropriate tests. [ECF No. 1 at ¶13]. These databases are available to by employers, potential patients, insurance carriers, and others to assess the competence of medical practitioners. [Id. at ¶14].

Plaintiff maintains that the Center's failure to enter accurate data, and to amend erroneous entries when the inaccuracies were discovered, violated provisions of the Administrative Procedure Act, 5 U.S.C. §701 et seq., entitling her to remedies including actual damages, attorney's fees, and costs. 5 U.S.C. § 552 (g) (2)-(4). The Defendants, having been retained by Bennett, corresponded with VA officials on her behalf, notifying them that her career and earning potential had been negatively impacted by the erroneous entries, and that corrections in the data should be made. According to Plaintiff, Defendants did not take further action on her behalf, and let the statute of limitations expire on claims that should have been made under the Administrative Procedure Act and the Federal Tort Claims Act, 28 U.S.C. 1346. "As the direct and proximate result of the Defendants' breach of duty, the erroneous MMPR entry remains unaltered and Plaintiff no longer has available to her any viable means to correct it." [ECF No. 1 at ¶ 27].

In September 2011, Plaintiff initiated this action, alleging that Defendants, through their inattention to the relevant statutes of limitations, breached the duty of care owed to her, and are liable in negligence and assumpsit for the harm that she suffered. Defendants responded by filing the pending motions.

**Personal Jurisdiction Over the Defendants**

**General Jurisdiction**

Under Fed. R. Civ. P. 4(e),[1] a federal court may assert personal jurisdiction over a non-resident defendant to the extent allowed by the law of the state in which the action is brought.

---

[1] This Rule provides in relevant part:

> Unless provided for by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or incompetent person, may be effected in any judicial

See Mellon Bank (East) PSFS, Nat Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992). Pennsylvania authorizes the exercise of long arm jurisdiction over non-residents to the fullest extent allowed under the Constitution of the United States. See 42 Pa. Con. Stat. Ann. § 5322(a)(4); Renner v. Lanard Toys Ltd., 33 F.3d 277, 279 (3d Cir. 1990) (same); Farino, 960 F.2d at 1221 (same). Accordingly, long-arm jurisdiction is bounded only by the Due Process Clause of the Fourteenth Amendment. See Kubik v. Letteri, 614 A.2d 1110, 1113-14 (Pa. 1992). Courts may not, however, presume that personal jurisdiction is proper merely because the requirements of a state's long arm statue have been satisfied. See Pennzoil Prod. Co. v. Colelli & Assoc., Inc., 149 F.3d 197, 201 (3d Cir. 1998).

Once a jurisdictional issue has been raised, the plaintiff bears the burden of establishing contacts sufficient to support the court's exercise of personal jurisdiction. See Marten v. Godwin, 499 F.3d 290, 295-96 (3d Cir. 2007); Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assn., 819 F.2d 434, 437 (3d Cir. 1987). Prior to trial, a plaintiff need only make a prima facie showing of jurisdiction, and the reviewing court must interpret all facts and allegations in a light most favorable to the plaintiff. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002).

The Plaintiff may meet her burden by pointing to facts sufficient to support a plausible claim that Defendants have had either general or specific contacts with the forum state. "A defendant is subject to general jurisdiction when it has continuous and systematic contacts with the foreign state." Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (citing Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984)). When a state has general jurisdiction over a party, the court may consider any claim, including those unrelated to the party's contacts with the state. Farino, 960 F.2d at 1221. The threshold showing required

---

district of the United States: (1) pursuant to the law of the state in which the district court is located. Fed. R. Civ. P. 4(e)(1).

to establish general jurisdiction is high. Reliance Steel Prods Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982). Having carefully reviewed the record, the Court finds that Plaintiff has failed to show that Defendants any contact with Pennsylvania that was consistent and systematic so as to establish general personal jurisdiction.

**Specific Jurisdiction**

Specific jurisdiction involves an assertion of personal jurisdiction over a defendant "arising out of or related to" defendant's contacts with the forum state. Helicopteros, 466 U.S. at 414, n. 8. Determining whether specific jurisdiction exists involves a three-part inquiry. [2] First, the court must consult the state's long-arm statute to ensure that it permits the exercise of personal jurisdiction. Next, the plaintiff must show that the defendant has "constitutionally sufficient 'minimum contacts' with the forum state." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 258-59 (3d Cir.1998) (citing Burger King v. Rudzewicz, 471 U.S. at 474. In order to establish specific jurisdiction, the plaintiff's claim must "arise out of or relate to those activities." Helicopteros, 466 U.S. at 414. Finally, a reviewing court may consider additional factors to ensure that the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting Int'l Show Co. v. State of Wash., Office of Unemployment Comp. and Placement, 326 U.S. 310, 316 (1945)).

---

[2] Some cases decided by the Court of Appeals for the Third Circuit have utilized a two-part test, noting that the third prong - a determination of whether exercising jurisdiction would comport with notions of fair play and substantial justice is discretionary. See, e.g., Pennzoil, 149 F.3d at 201. However, the third prong is almost universally applied, and has even been referred to as "mandatory." See, e.g., Mesalic v. Fiberfloat Corp., 897 F.2d 696, 701 (3d Cir.1990) ("Having determined that there were sufficient minimum contacts, we must determine whether the assertion of personal jurisdiction accords with notions of 'fair play and substantial justice.'") (citations omitted). See also O'Connor v. Sandy Land Hotel, Co., Ltd., 496 F.3d 312,317 (3d Cir 2007) ("inquiry as to whether specific jurisdiction exists has three parts")

5

In order for a court analyzing the first prong of the specific jurisdiction analysis to find that sufficient minimum contacts warrant assertion of personal jurisdiction, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting business within the forum state, thus invoking the benefits and protections of its laws." Farino, 960 F.2d at 1221 (quoting Hanson v. Denckla, 357 U.S. 235, 253, (1958)). These acts must be "such that [the defendant] should reasonably anticipate being haled into court [in the forum state]." World-Wide Volkswagen Corp. v. Woodson 444 U.S. 286, 297 (1980). This test is intended to protect a non-resident defendant from jurisdiction based on contacts that are "random, fortuitous," or "attenuated," or that result from the unilateral activity of another party or a third person. Burger King, 471 U.S. at 475 (citations omitted).

Not even the first requirement for specific jurisdiction is met here. Bennett does not allege any facts showing that Defendants have "purposely directed their activities at the forum." Quantum Plating, Inc. v. Cent. Freight Lines, Inc., Civ. Action No. 09-166, 2011 WL 673913 at *5 (W.D. Pa. Feb. 17, 2011). It is equally clear that the second requirement is absent; this dispute does not "arise out of or relate to" any activity occurring in this District.[3] Burger King Corp., 471 U.S. at 472. Consequently, this Court lacks both general and specific jurisdiction over this matter. Bennett recognizes as much when she characterizes the Defendants' position as an improper venue argument, and "requests that this action be transferred to [the Northern District of Florida] pursuant to 28 U.S.C. § 1404(a)." [ECF No. 12 at 1]. Section 1404(a), however, does

---

[3] Because the facts provided by Bennett are insufficient – individually and collectively – to make out a prima facie case for personal jurisdiction over the Defendants, the Court need not determine whether Defendants have shown that a finding of personal jurisdiction in this District would violate notions of "fair play and substantial justice."

not apply to the facts of this case.[4] Venue is not proper here.[5] It is 28 U.S.C. § 1406(a), which applies when venue in the district where suit was filed is improper, but would be proper in an alternate district.[6]

Although the concepts of jurisdiction and venue are related, this case turns on the exercise of jurisdiction. Although Plaintiff does not raise this argument, §1406(a) may be invoked to transfer an action brought in a district which lacks personal jurisdiction over the defendants. See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 465-66 (1962) (articulating rule that court may transfer venue under § 1406(a) even where it lacks jurisdiction over the defendant). See also Lafferty v. St. Riel, 495 F.3d 72, 80 (3d Cir. 2007) (recognizing Goldlawr rule).

This interpretation of §1206(a) parallels the treatment of transfers authorized by 28 U.S.C. § 1631, which reads in relevant part:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed . . . , and the action . . . shall proceed as if it had been filed in . . . the court from which it is transferred.

---

[4] According to this section: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In order for this section to apply, venue must be proper in both the original and transferee districts. See Jolly v. Faucett, Civil Action No. 06-3286, 2007 WL 137833 at * 2 ( E.D. Pa. Jan. 16, 2007) (citing Jumara v. State Farm Ins. Co,, 55 F.3d 873, 979 (3d Cir. 1995)).

[5] Venue based solely on diversity of citizenship is governed by the provisions of 28 U.S.C. §1391(a).

[6] This section provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." This section applies only where the original venue is improper. See Jolly, 2007 WL 137833 at *2. Section 1406(a) permits dismissal, whereas section 1404(a) permits only transfer.

Id. Courts in the Third Circuit have relied on §1631 to avoid dismissing a case where there is a lack of jurisdiction in the original forum, despite the Supreme Court's clarification in Goldlawr that the same result obtains under § 1406(a). See Exton v. Our Farm, Inc., 943 F. Supp. 432, 441 (D.N.J. 1996) (finding that reliance on § 1631 made it unnecessary to reach whether action should be dismissed or transferred pursuant to § 1406(a)). [7] See also Modern Mailers, Inc., v. Johnson & Quin, Inc., 844 F. Supp. 1048, 1055-56 1994) (recognizing that transfer for lack of personal jurisdiction may be accomplished under § 1631 or § 1406(a)).

Transfer to a district with jurisdiction is optional where the plaintiff consents. This prevents the plaintiff from losing "its day in court simply because it filed the claim in the wrong district." Id. at 1056. "Oftentimes, plaintiff makes a motion to transfer as an alternative to complete dismissal if the court fails to find jurisdiction over the defendant." Id. at 1055. Where a Plaintiff opposes the transfer, however, "the court has no purpose in forcing the plaintiff to litigate its claim in another court." Id. at 1056 (citing Carteret Sav. Bank, F.A. v. Shushan, 919 F.2d 225, 230-32 (3d Cir. 1990). In this case, where Plaintiff has requested transfer, the request should be granted.

### III. CONCLUSION

For the reasons set out above, it is respectfully recommended that this matter be transferred to the Northern District of Florida.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, Objections to this Report and Recommendation are

---

[7] According to Moore, "the concepts of venue and personal jurisdiction [have become] essentially coextensive." 17A Moore's Federal Practice, § 111.02 (Matthew Bender 3d ed. 2006).

due by January 27, 2012.  Failure to timely file Objections will constitute waiver of any appellate rights.  <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

          Respectfully submitted,

          <u>/s/ CYNTHIA REED EDDY</u>
          Cynthia Reed Eddy
          United States Magistrate Judge

Dated:  January 12, 2012

cc:    All counsel of record pursuant to CM-ECF